IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 1:11-CR-1 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| | : | (Magistrate Judge Carlson) |
| EUGENE IDEMUDIA | : | |

**MEMORANDUM AND ORDER**

**I.   Introduction**

This case comes before us for consideration of the defendant's objections to a writ of continuing garnishment issued by the district court, which called upon Mr. Idemudia's current employer, Uber, to garnish 25% of the defendant's disposable earnings to satisfy an outstanding restitution obligation.[1]  We held a hearing in this matter on September 27, 2022, at which time Mr. Idemudia and the United States were provided a full opportunity to address any objections to this writ of continuing garnishment. While we acknowledge the financial and equitable concerns voiced by the defendant, having conducted an individualized assessment of the facts and

---

[1] On September 1, 2022, the district court referred these objections to the undersigned for resolution. (Doc. 92). At the hearing conducted by this court on September 27, 2022, the parties consented to this court exercising jurisdiction over this dispute and issuing a final decision in this matter. Therefore, these objections are properly addressed by the undersigned through a Memorandum and Order. See The Soc. of Lloyd's v. Bennett, 204 F. App'x 728, 732 (10th Cir. 2006) (parties may consent to magistrate judge jurisdiction over aspects of garnishment proceedings).

1

circumstances presented in this case, for the reasons set forth below it is ordered that the defendant's objections to this writ of continuing garnishment are OVERRULED, and garnishee Uber Technologies is ORDERED to comply with this writ of continuing garnishment pending further order of court. In addition, as discussed at the hearing conducted in this case, if the defendant wishes to seek further modification of this garnishment order, Mr. Idemudia is DIRECTED to provide updated, complete and accurate financial information to the United States Attorney's Office on or before October 14, 2022, so that office may determine whether there has been a material change in the defendant's economic condition which warrants modification of this garnishment order. This order is entered without prejudice to the parties seeking further modification of the garnishment order due to materially changed circumstances.

## II.     Factual Background and Procedural History

The factual background of this case can be simply stated.

On December 3, 2010, a criminal complaint was filed against Eugene Idemudia, charging him with conspiracy to commit mail fraud, wire fraud, and money laundering. (Doc. 1). These charges related to what was alleged to be Idemudia's role in a far-reaching international telemarketing fraud scheme. Following his arrest Idemudia and his counsel negotiated a guilty plea agreement in this case. As part of that agreement, Idemudia was charged in a one count criminal

information with conspiring to commit mail and wire fraud in violation of Title 18, United States Code, section 1349. (Doc. 24). On February 10, 2011, Idemudia pleaded guilty to this charge pursuant to the terms of a plea agreement with the United States. (Docs. 40-42).

Under the terms of this written plea agreement, Idemudia acknowledged that pursuant to the Mandatory Victim Restitution Act the government would seek, and the court would be required to impose, a restitution order in the full amount of the victim losses suffered as a result of this criminal activity. (Doc. 26, ¶16). Idemudia further agreed to make full restitution for these victim losses. (Id., ¶17). With these understandings and commitments on his part, Idemudia pleaded guilty and proceeded to sentencing on November 22, 2011. (Doc. 56).

At his sentencing Idemudia was sentenced to 38 months' incarceration followed by a three-year term of supervised release. (Id.) Idemudia was also ordered to make full restitution in the amount of $1,015,576.55 to the more than 300 victims identified in this sweeping international fraud case. (Id.) Under the terms of this judgment and commitment order, Idemudia was directed to initially make restitution payments in minimum monthly installments of no less than $100 while serving his three-year term of supervised release. (Id.)

Idemudia completed his jail term and period of supervised release in January of 2017. While Idemudia made $100 payments towards his restitution while on

supervised release, it appears that once his supervised release term ended, Idemudia ceased making any voluntary restitution payments.

After more than two years passed without further restitution payments on his part, in August of 2019 the government filed its first petition for writ of garnishment in this case, seeking to garnish a portion of Idemudia's wages from his employer, Freshly, ADT Totalsource. (Docs. 73-81). In January of 2022, the government learned that Idemudia was no longer employed by Freshly and moved to withdraw this first writ of continuing garnishment. (Docs. 83-84). At the same time the United States filed a second petition for writ of continuing garnishment, naming Uber Technologies as the current wage payor and garnishee for Idemudia. (Doc. 85). This application for writ of continuing garnishment was granted by the district court, (Doc. 86), the clerk filed a writ of continuing garnishment which called for the garnishment of 25% of Idemudia's disposable earnings through Uber, (Doc. 87), and Idemudia received notice of this garnishment. (Doc. 87).

On August 30, 2022, Idemudia filed a request for a hearing relating to this writ of garnishment. (Doc. 91). In this request Idemudia stated that the "25% that is being garnish[ed] from my pay is rendering me unable to pay my bills and take care of my family." (Doc. 91). The district court then referred this matter to this court, and we scheduled a video hearing in this matter on September 27, 2022.

At this hearing Idemudia appeared and testified providing further background on his claim of economic hardship. According to Mr. Idemudia, his total expenses for lodging, food, automobile, insurance, gas, and other incidentals approached the disposable income he was earning through Uber. Mr. Idemudia also indicated that he had additional family expenses since he had one daughter in college and a second child enrolled in high school. According to the defendant, while he was able to make the monthly $100 payments that had been previously ordered during his term of supervised release, the garnishment of 25% of his disposable income presented a genuine financial hardship for him and his family.

On cross examination, we learned that, even though Mr. Idemudia attested that $100 monthly payments did not impose an undue hardship upon him, he had made no such voluntary payments for the past five years, since January of 2017. Mr. Idemudia also conceded that he had not provided the United States Attorney's Office Financial Litigation Unit with current financial information, and agreed that his 2020 tax returns, the last information provided to the government by Idemudia, indicated that he had an income of approximately $55,000.

On these facts, the government urged us to overrule Idemudia's objections to this garnishment order but pledged to re-examine the amount of the garnishment should Idemudia provide updated, verified financial information which would confirm a material change in his economic position that would warrant some relief

from this writ. In turn, we instructed Idemudia to provide updated financial information to the government for its consideration.

It is against this factual backdrop that we consider the defendant's objections to this writ for continuing garnishment. Upon consideration of this matter, those objections will be overruled.

### III.   Discussion

By enacting the Mandatory Victim Restitution Act, (MVRA) 18 U.S.C. § 3663A, *et seq*., Congress evinced the clear intention that the United States should strive to make the greatest financial restitution recovery possible for victims of crime. Thus, the MVRA directs that the entry of orders directing full restitution to crime victims is mandatory, stating that: "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664 (f)(1)(A). The MVRA also confers sweeping powers upon the United States to enforce restitution orders and secure financial recoveries for victims of crime. 18 U.S.C. § 3664(m). These enforcement powers include a panoply of civil remedies as set forth in 18 U.S.C. § 3613, permitting levies, seizures, and garnishment of a criminal defendant/debtor's assets. These broad civil judgment enforcement tools, in turn, are only tempered by a series of carefully crafted statutory exemptions for certain assets belonging to defendant/debtors.

In this case the government has sought to utilize one of the civil judgment enforcement tools at its disposal, a writ of garnishment, garnishing 25% of the defendant's disposable earnings. Such writs of garnishment are specifically authorized by 28 U.S.C. § 3205(a), which provides that: "[a] court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor." 28 U.S.C. § 3205 (a). Section 3205 also prescribes the practice and procedure for issuance of a writ of garnishment. As part of this process a defendant, like Mr. Idemudia, must be provided an opportunity to lodge objections to the writ. 28 U.S.C. § 3205. Where, as here, a debtor like Idemudia objects to the garnishment and requests a hearing, it is incumbent upon the court to provide him with that opportunity to be heard. However, the scope of any such hearing is narrowly defined and "[t]he issues at such hearing shall be limited-- (1) to the probable validity of any claim of exemption by the judgment debtor." 28 U.S.C. § 3202(d).

Set against this statutory backdrop, we begin in Mr. Idemudia's case by assessing whether the evidence presented by the defendant is grounds to set aside this writ of garnishment because the evidence disclosed the probable validity of any claim of a statutory exemption to the writ of garnishment. On the facts presented to

7

us, we find that the defendant has not made any showing that he is entitled to a statutory exemption from this garnishment.

The gist of Mr. Idemudia's argument is his claim that the garnishment of 25% of his disposable income is wrongful and excessive. However, this contention is unavailing for several reasons.

First, to the extent that Mr. Idemudia attempts to cloak this argument in terms of some statutory exemption that he is entitled to assert, this contention fails as a matter of law. This argument fails because the garnishment of up to 25% of the defendant's disposable earnings is specifically authorized by statute. In particular, 18 U.S.C. § 3613(a), which generally defines the government's power to collect and enforce restitution judgments and outlines the exemptions that debtors may assert, states that: "the provisions of section 303 of the Consumer Credit Protection Act (15 U.S.C. 1673) shall apply to enforcement of the judgment under Federal law or State law." 18 U.S.C. § 3613(a)(3). However, 15 U.S.C. § 1673 expressly authorizes the garnishment of up to 25% of a criminal defendant/debtor's disposable income. 15 U.S.C. § 1673 (a)(1) ("the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed (1) 25 per centum of his disposable earnings for that week, . . . .") Therefore, the amount of this garnishment does not violate any exemption provided by the Consumer Credit Protection Act; rather, the amount of this garnishment is expressly

8

authorized by that statute. Furthermore, Idemudia has cited no other statutory exemption that may apply here, and we find no grounds for invoking any statutory exemption to this garnishment.

Moreover, we note that in connection with his objections to the writ of garnishment, Mr. Idemudia cited the fact that the court's original judgment and commitment order in this case called for minimum $100 monthly payments towards this restitution during the term of his supervised release as evidence of the improper and excessive nature of the garnishment. While the precise tenor of this argument was not entirely clear, to the extent that the defendant suggests that the monthly payment schedule prescribed in the judgment and commitment order set a ceiling on the scope of a writ of garnishment, he errs. Simply put, a schedule of payments in a judgment and commitment order does not act as a legal bar to the government pursuing other collection measures aimed at making victims whole. Quite the contrary, as one court has aptly observed in this regard:

> Nor does the periodic payment provision in the judgment prohibit the garnishment. Other courts have made clear that the government may seek a writ of garnishment requiring payments on a schedule that exceeds that previously ordered by the Court. In a recent Fifth Circuit case, the court rejected a defendant's objection to a garnishment on grounds similar to those advanced by defendant Miller, reasoning:
>
>> Ekong contends that there was no justification for requiring immediate payment because the criminal judgment specified that restitution be paid in installments. This argument is without merit. "The

9

> [Mandatory Victim Restitution Act (MVRA)] provides the Government authority to enforce victim restitution orders in the same manner that it recovers fines and by all other available means" and, under 18 U.S.C. § 3613(a), it may collect "restitution 'in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law,' " including the Federal Debt Collection Procedures Act of 1990. United States v. Phillips, 303 F.3d 548, 550–51 (5th Cir.2002). The attorney general is required by the MVRA to enforce victim restitution orders "aggressively." Id. at 551. There is nothing in the criminal judgment to the contrary.
>
> United States v. Ekong, 518 F.3d 285, 286 (5th Cir.2007) (per curiam). A district court recently reached the same result, finding that the periodic payment provision in a criminal judgment cannot be immutable or insulate a defendant from other collection efforts. United States v. Lawrence, 538 F.Supp.2d 1188, 1193 (D.S.D.2008). The court appropriately observed that it would be "wholly unrealistic to assume that a defendant's ability to make installment payments would not change during the 20–year limitations period for the collection of debts, especially when this period does not even begin to run until the defendant has completed the custody portion of his sentence." Ibid.; see also James, 312 F.Supp.2d at 806–07 (noting that "the existence of this [payment] schedule does not mean that the government is precluded from pursuing other avenues of ensuring that defendant's restitution obligation is satisfied"); United States v. Hanhardt, 353 F.Supp.2d 957, 959–61 (N.D.Ill.2004) (holding that a payment schedule does not pre-empt other collection efforts, and a claim by family members to pension benefits is not superior to the government's claim for restitution).

United States v. Miller, 588 F. Supp. 2d 789, 796–97 (W.D. Mich. 2008).

Further, to the extent that Mr. Idemudia cites this prior payment schedule as an equitable consideration which should guide some discretionary modification of

10

this writ of garnishment, we believe that there is a threefold rejoinder to this contention.

First, this position would have greater resonance if the defendant had actually continued to voluntarily pay $100 per month towards the more than 300 victims of his crime after he completed supervised release in January of 2017. However, it appears that Idemudia eschewed making any further voluntary restitution payments for the past five years. This immutable fact severely undercuts any equitable appeal by the defendant to the court's discretion.

Second, while the government and the court retain some ability to adjust the amount of restitution payments when "any material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution," under the statute it is incumbent upon the defendant "[to] notify the court and the Attorney General of any material change in the defendant's economic circumstances." 18 U.S.C. § 3664(k). Presently, it is undisputed that Mr. Idemudia has not provided the United States with updated, verified financial information since 2020 despite apparently have been asked to do so. Thus, Mr. Idemudia has neglected to provide the government with the type of financial data that would allow it, and the court, to make a fully informed judgment regarding whether there has been a material change in his economic circumstances which would justify relief from the current writ of garnishment. Having failed to make timely and
11

fulsome disclosures of this information to the government, as he is required to do, Mr. Idemudia cannot currently avail himself of this safe harbor from further garnishment.[2]

Finally, in our view there is a broader equitable consideration which must be taken into account when considering whether to exercise our discretion and grant relief from a garnishment order designed to collect restitution for long suffering crime victims. While we must examine the difficulties which a writ of garnishment imposes on a criminal defendant/debtor, when considering garnishment for the purpose of making restitution that individual hardship must be weighed against the financial pain which Idemudia visited upon the victims of his crime. In this case, the scope and duration of that financial pain is significant. The conspiracy that Idemudia willingly joined in 2010 defrauded more than 300 individuals out of sums in excess of $1,000,000. Even today, more than a decade later, these crime victims continue to endure substantial losses since the government reports that more than $991,000 of this restitution remains unpaid. (Doc. 85, at 1). When this prolonged, profound hardship experienced by hundreds of innocent crime victims is cast upon the equitable scales and weighed against the current financial travails experienced by

---

[2] We note that during our September 27, 2022, the government voiced a willingness to consider further modifications of this garnishment in the event that Idemudia complied with its requests for current, accurate financial information. At the hearing we directed Idemudia to provide this information to the United States.

the defendant, we believe that the needs of the victims of Idemudia's crime far outweigh his personal inconvenience. Therefore, this final equitable balancing of interests cautions against setting aside this garnishment order at the present time.

## IV. Conclusion

Weighing and balancing these countervailing considerations, we find that the defendant's objections to this writ of continuing garnishment should be OVERRULED, and garnishee Uber Technologies should be ORDERED to comply with this writ of continuing garnishment pending further order of court. In addition, as discussed at the hearing conducted in this case, if the defendant wishes to seek further modification of this garnishment order Mr. Idemudia should provide updated, complete and accurate financial information to the United States Attorney's Office so that office may determine whether there has been a material change in the defendant's economic condition which warrants modification of this garnishment order.

An appropriate order follows.

/s/ Martin C. Carlson  
Martin C. Carlson  
United States Magistrate Judge

DATED: September 30, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 1:11-CR-1 |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| | : | (Magistrate Judge Carlson) |
| EUGENE IDEMUDIA | : | |

**ORDER**

In accordance with the accompanying Memorandum Opinion, IT IS ORDERED that the defendant's objections to this writ of continuing garnishment are OVERRULED, and garnishee Uber Technologies is ORDERED to comply with this writ of continuing garnishment pending further order of court. In addition, as discussed at the hearing conducted in this case, if the defendant wishes to seek further modification of this garnishment order Mr. Idemudia is DIRECTED to provide updated, complete and accurate financial information to the United States Attorney's Office on or before **October 14, 2022,** so that office may determine whether there has been a material change in the defendant's economic condition which warrants modification of this garnishment order.

So ordered this 30th day of September 2022.

/s/ Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

14